IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEBBIE PERSONS,                          §
                                         §
        Plaintiff,                       §
                                         §
v.                                       §        Civil Action No. H-03-4501
                                         §
JACK IN THE BOX, INC. and                §
JACK IN THE BOX EASTERN                  §
DIVISION, L.P.,                          §
                                         §
        Defendants.                      §

ORDER

Pending before the Court is Plaintiff's Motion to Amend Final Judgment and

Application for Attorney's Fees (Instrument No. 70).  After considering the motion,

submissions, and applicable law, the Court determines that Plaintiff's Motion to Amend

Final Judgment and Application for Attorney's Fees shall be granted in part and denied

in part.

BACKGROUND

Plaintiff Debbie Persons ("Persons") brought suit against Defendants Jack in the

Box, Inc. and Jack in the Box Eastern Division, L.P. (collectively "Jack in the Box")

alleging discrimination in violation of the Texas Commission on Human Rights Act

("TCHRA").[1]  Plaintiff, who worked for Jack in the Box as a general manager and then as a training specialist, alleged Jack in the Box terminated her because of a disability. On February 3, 2006, a jury concluded that Persons's disability was a motivating factor in Jack in the Box's decision to fire her, and awarded Persons $157,000 in lost wages, $12,000 in lost benefits and $130,000 in compensatory damages.[2]   The Court subsequently issued a Final Judgment.

On February 17, 2006, Persons filed the instant motion requesting that the Court order her reinstatement to the job or award front pay in lieu of reinstatement, and seeking pre- and post-judgment interest, attorneys' fees and costs.  Defendants oppose Persons's requests for reinstatement, front pay and attorneys' fees.

## LAW AND ANALYSIS

A.  Reinstatement or Front Pay

Persons seeks either to be reinstated to her position at Jack in the Box or,

---

[1]  The Court notes that the Defendants dispute who actually employed Persons. The jury, however, determined that Jack in the Box, Inc. and Jack in the Box Eastern Division jointly employed her.  Accordingly, for the purposes of this Order, the Court refers to both entities as Jack in the Box.

[2]  The jury did not find the termination happened with malice or reckless indifference to Persons's rights.  Therefore, no punitive damages were assessed against Jack in the Box.

2

alternatively, front pay totaling two years' salary prior to the illegal discharge.[3]  Jack in the Box argues that both requests should be denied because Persons failed to plead for these remedies or disclose them in her joint pretrial order.  Additionally, Jack in the Box asserts that Persons waived any front pay award by not submitting the issue to the jury.  Jack in the Box contends Persons has failed to demonstrate that reinstatement is not feasible or specify to which position she seeks reinstatement.  Finally, Jack in the Box argues Persons has not met her burden to demonstrate that two years of front pay is appropriate in the case.  Persons counters that it is irrelevant that she did not plead or include such equitable remedies in her joint pretrial order; the judge, not the jury, decides the amount of front pay; and reinstatement is not feasible in light of Jack in the Box's refusal to respond to her prior requests for reinstatement.

Reinstatement and front pay are both equitable remedies authorized under the TCHRA.  *See File v. Hastings Entm't, Inc.*, No. Civ.A 2-02CV-0213J, 2003 WL 21436175, at *1 (N.D. Tex. June 18, 2003); *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 227 (Tex. App.–San Antonio 1998, pet. denied).  The Court notes at the outset that Persons's failure to specifically request reinstatement or front pay does not preclude such an award.  *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870

---

[3]  Persons's salary with Jack in the Box before her termination was $51,000.  Thus, she seeks a total of $102,000 in front pay.

(5th Cir. 1991); *see generally Gobert v. Babbitt*, No. CIV.A. 98-2629, 2000 WL 1876254, at * 3 (E.D. La. Dec. 21, 2000) (recognizing that equitable remedies such as reinstatement are available despite not being included in a joint pretrial order).  It is well settled that reinstatement, rather than an award of front pay, is the preferred remedy in discrimination cases. *See, e.g., Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002); *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 n. 27 (5th Cir. 2001).  If reinstatement is not feasible, then a court may consider front pay. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992); *Reneau*, 945 F.2d at 870.

Interestingly, Jack in the Box argues Persons has not met her burden to show that reinstatement is not feasible, but correspondence between the two parties demonstrates that when Persons inquired about possible reinstatement, Jack in the Box "suggested" reasons negating placing Persons back on the job.[4]  Jack in the Box noted that both Persons's prior positions, general manager and training specialist, have been filled since her November 2002 discharge.  Moreover, it avers that if reinstated, Persons "would ultimately be required to report to and/or routinely interface with individual(s) which she has accused of engaging in wilful and intentional discrimination, fraud and civil

---

[4] Jack in the Box contends that Persons has not specified which position she seeks to be reinstated.  Based on the fact that prior to her termination she was a training specialist and earned $51,000 a year, the Court will presume Persons wishes to return to that position.

4

conspiracy. . ."  The letter then says placing Persons back into the job environment while Jack in the Box appeals "could potentially result in a less than harmonious working environment. . . ."[5]  Persons notes these "suggestions" demonstrate that reinstatement may not be feasible  and re-urges her argument for front pay in lieu of reinstatement.

When evaluating the feasibility of reinstatement, courts may consider a variety of factors, including whether the employer has any existing vacancies, whether reinstatement would displace another employee and whether the plaintiff has secured substantially similar employment.  *See Ray v. Iuka Special Mun. Separate School Dist.*, 51 F.3d 1246, 1254 (5th Cir. 1995).  In the case at bar, the training specialist position has been filled since Persons's termination more than three years ago.  Consequently, reinstatement would require displacement of an existing employee.  Moreover, there is significant hostility and discord between the parties, as demonstrated through this ongoing and undeniably contentious litigation, and the parties involved in her termination are still employed by Jack in the Box.  *See Swanson v. City of Bruce*, No. 3:00CV194-D-A, 2006 WL 717489, at *7 (N.D. Miss. March 16, 2006) (citing *Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1448-49 (5th Cir. 1985)); *see also File*,

---

[5] Also in the correspondence, Jack in the Box challenges Persons's request for reinstatement because she did not specifically plead it or include it in the joint pretrial order.

2003 WL 21436175, at *2; *Griener v. Allstate Insurance Co.*, Civ.A. No. 82-4676, 1987 WL 16454, at *2 (E.D. La. Aug. 4, 1987) (noting that front pay is appropriate where reinstatement is not feasible because of hostility between the parties or because of a lack of an available position).  Accordingly, the Court finds that Persons has sufficiently demonstrated that reinstatement is not feasible.  Thus, the Court next considers an award of front pay.

Generally, if reinstatement is not feasible, front pay should be awarded. *Brunneman v. Terra Int'l, Inc.*, 975 F.2d 175, 180 (5th Cir. 1992).  Front pay is designed to make whole a plaintiff who has suffered employment discrimination in situations where reinstatement is not feasible. *Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1469 (5th Cir. 1989).  Jack in the Box argues a front pay award of two years' salary is speculative and will result in a windfall to Persons because she has not demonstrated she will be unable to locate employment over the next twenty four months.

Calculations of front pay are necessarily speculative and therefore cannot be completely accurate. *Deloach v. Delchamps*, 897 F.2d 815, 822 (5th Cir. 1990). Consequently, courts must make intelligent estimations to arrive at the best outcome. *Id*.  Evidence at trial showed that Persons attempted to mitigate her damages by attending several job fairs and submitting her resumes with other restaurants and fast

food companies.  Therefore, the Court finds some evidence of mitigation in support of a front pay award of $51,000.  Accordingly, the Court awards Persons front pay equal to her salary for one year as a training specialist.

## B.  Interest

Persons seeks an award of pre- and post-judgment interest on the jury award for lost wages, benefits and compensatory damages.  Jack in the Box does not appear to oppose interest on the judgment.  Pursuant to 28 U.S.C. § 1961(b) (2000), post-judgment interest is calculated from the date of the entry of judgment.  The post-judgment interest rate for the week of March 27, 2006 to April 2, 2006 is 4.77%. Accordingly, the Court grants post-judgment interest on the judgment, including attorneys' fees, at the rate of 4.77%.  *See Curry v. Ensco Offshore Co.*, 54 F. Appx. 407 (5th Cir. 2002).

Additionally, the trial court has discretion to award Persons pre-judgment interest on her back pay award.  *Gloria v. Valley Grain Products, Inc.*, 72 F.3d 497, 499 (5th Cir. 1996); *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1149 (5th Cir. 1988).  The purpose of pre-judgment interest is "to restore the plaintiff to the position [she] would have had but for the discrimination."  *Dibler v. Metwest, Inc. d/b/a Damon/Metwest*, No. CA3:95-CV-1046-BC, 1997 WL 222910, at *4 (N.D. Tex. April 29, 1997). Therefore, the Court concludes Persons is also entitled to pre-judgment interest at a rate

of 4.77% on the jury's award of lost wages and benefits. *Id*.

C. Attorneys' Fees

As the prevailing party, Persons seeks attorneys' fees in the amount of $45,748.22. Title 42 U.S.C. § 2000e-5(k) provides that the court, "in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k) (2000). To determine the amount to be awarded, courts use the lodestar method. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Under this method, the district court first determines both the hourly rates for the lawyers involved in the case and the reasonable number of hours spent on the litigation. *Id*. at 324 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, the district court determines the lodestar by multiplying the reasonable hourly rates by the number of reasonable hours expended in the litigation. *Id*. Finally, the court either accepts the lodestar or adjusts it upward or downward based upon the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 7171-19 (5th Cir. 1974). *Kellstrom*, 50 F.3d at 329. The Court will address each factor in turn.

The Court must determine an appropriate hourly billing rate. *Kellstrom*, 50 F.3d

8

at 327.  Persons requests attorneys' fees for two lawyers, Scott Fiddler, her counsel

from December 2002 to August 2005, and Peter Costea, who represented her from

August 2005 through the jury trial.  Both attorneys submit rates of $200 an hour, and

Fiddler requests hourly billing rates of $50 per hour for legal tasks performed by his

law clerk and his legal assistant.  As the fee applicants, Fiddler and Costea bear the

burden of producing evidence that the requested rate is appropriate within the Houston

market.  *See Deltatech Constr., LLC v. The Sherwin-Williams Co.*, No. Civ.A.04-2890,

2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005).  "Reasonable hourly rates are

determined by looking to the prevailing market rates in the relevant legal community."

*Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002) (citing

*Watkins*, 7 F.3d at 458-59).

Fiddler and Costea contend these amounts are well within the prevailing hourly

rates charged by attorneys and legal assistants in the Houston community of similar

experience for this type of litigation.  As proof that their requests are reasonable,

Fiddler and Costea provide affidavits detailing their experience. Fiddler, who has been

licenced to practice law since May 1990, represented Persons in a state court suit and

in this case through August 2005.[6]  He is board certified in labor and employment law

---

[6]  Persons lost her state court case of civil conspiracy and worker's compensation
discrimination against Jack in the Box.

9

as well as civil trial law, and has tried cases in both state and federal courts.[7]  Costea

has been licensed to practice law since November 1990.  He has either tried or

arbitrated almost seventy lawsuits in federal and state courts, and most of the cases

have involved employment-related disputes.  Jack in the Box does not appear to object

to these rates, and the Court finds them to be reasonable and supportable based on the

Houston market and their experience.  Additionally, the Court finds the $50 an hour

billing rate for a legal assistant and a law clerk to be generally within the customary

range in Houston.

Next, the Court must determine whether the hours that Fiddler and Costea claim

were "reasonably expended."  *See Kellstrom*, 50 F.3d at 329 (quoting *Alberti v.*

*Klevenhagen*, 896 F.2d 927, 933-34 (5th Cir. 1990)).  Courts should examine both

whether the total number of hours claimed is reasonable and whether specific hours

claimed were reasonably expended.  *League of United Latin Am. Citizens # 4552 v.*

*Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997).  Any hours not

reasonably expended, excessive or duplicative should be excluded from consideration.

*Id*.; *see also Hensley*, 461 U.S. at 434; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.

---

[7]  Fiddler submits that the $200 hourly rate he seeks is less than his current rate of
$250 an hour.  He states that at the time he took Persons's case, his rate was $200.
Though he raised his rate to $250 an hour in January 2003, Fiddler states he continued to
charge Persons the $200 rate.

1993).

The burden is on the party seeking reimbursement to show that its hours are reasonable. *Id*. at 437. The applicant's documentation must be sufficient for a court to ensure the applicant has met this burden. *Id*. "In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Id*.

Of the $45,748.22 total, Fiddler requests $19,948.22 for 185.77 hours of work performed by his firm.[8] Jack in the Box objects to Fiddler's request, asserting that many of the fees accrued from his work on the state court against it. Persons responds by stating that Fiddler did separate the fees incurred in the state court proceeding from those he seeks in the instant case, however, there is some overlap because the state and federal court cases were so intertwined, involving common facts and related legal theories. The Court conducted an in-depth review of Fiddler's billing records. Fiddler concedes that many of the hours accrued involved work for both cases, however, without more information as to each task, it is impossible for the Court to determine how many of the hours were necessarily incurred in *this* litigation. As the fee applicant,

---

[8] Included in Fiddler's documentation are the costs he spent in the case, some of which Jack in the Box challenges as being spent on the state court case. However, the Court notes that its award of attorneys' fees does not include such costs.

Fiddler bears the burden of establishing entitlement to the award he seeks, and the Court determines he has not met this burden. *See generally Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) (noting that the fee applicant can meet this burden "only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement"). The Court disagrees with Jack in the Box's contention that Fiddler must segregate fees in the federal case for work done on successful and unsuccessful claims. *See United States v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998). However, the Court does not find it appropriate to award attorneys' fees based on work completed in an unsuccessful, entirely separate case in state court. *See generally Lipscomb v. Columbus Municipal Separate Sch. Dist.*, 261 F. Supp. 2d 626, 632 (N.D. Miss. 2003) (denying a request for certain hours to be included in the fee calculation because the Court determined the work was expended in state court litigation that preceded a federal case). However, Fiddler is entitled to some compensation based on the undisputed fact that he did perform work related to the federal case. Therefore, the Court divides the hours it finds compensable in half. As such, the Court concludes Fiddler should receive a total of $10,039.50 in attorneys' fees for his work on the federal case, which includes 38.4 hours of his time and 47.19 hours of his law clerk's and legal assistant's time.

Costea seeks $23,800 in attorneys' fees for 119 hours of work to date.

Additionally, he seeks another $2,000 for ten hours of work in the event Jack in the Box appeals. Costea spent four days in trial, and his billing records demonstrate that all 119 hours were reasonably expended in the litigation. Accordingly, these hours will be included in the calculation of fees. Additionally, the Court grants his request for an extra ten hours of work in the event of an appeal.

After the appropriate rates and hours expended have been determined, courts must calculate the lodestar "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). After a court determines the lodestar figure, it should use the *Johnson* factors to determine if an increase or a decrease is warranted. *Singer*, 324 F.3d at 829. There is a strong presumption that the lodestar award is the reasonable fee in a case. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Accordingly, the Court calculates the lodestar in the instant case as $35,839.50 ($10,039.50 for Fiddler and $25,800 for Costea).

The third part of the fee analysis requires district courts to apply the twelve *Johnson* factors. *See Johnson*, 488 F.2d at 717-19. The Court considers the following:

1.    the time and labor required;

2.    the novelty and difficulty of the legal questions;

3.    the skill required to perform the legal service properly;

13

4.      the preclusion of other employment by the attorney due to the acceptance of this case;

5.      the customary fee for similar work in the community;

6.      whether the fee is fixed or contingent;

7.      time limitations imposed by the client or circumstances;

8.      the amount involved and results obtained;

9.      the experience, reputation, and ability of the attorneys;

10.     the "undesirability" of the case;

11.     the nature and length of the professional relationship with the client; and

12.     awards in similar cases.

*Id*. In applying these factors, a district court must ensure that a fee award does not provide a windfall to the plaintiff. *See Kellstrom*, 50 F.3d at 328.

Jack in the Box asks that the Court reduce the lodestar based on Persons's success at trial. It argues that in the federal court case, Persons sued for fraud, negligent misrepresentation, promissory estoppel, civil conspiracy, gender discrimination and disability discrimination but she only succeeded at trial on her disability discrimination claim. In contrast, Persons argues she never pursued the

14

gender discrimination or common law claims.[9]  Rather, she proceeded on two claims, and succeeded on her disability discrimination cause of action.  Accordingly, Persons argues that the fee request should not be reduced.   After carefully reviewing the *Johnson* factors, the Court declines to adjust the lodestar figure from the previous calculation and determines that the above-calculated fee is reasonable and appropriate pursuant to controlling case law

D.  Costs

Persons requests $4,846 in costs, including a filing fee, legal research, depositions, parking and copying charges.  Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs "to the prevailing party unless the court otherwise directs."  FED. R. CIV. P. 54(d)(1).  The Fifth Circuit strongly presumes that courts will award costs to the prevailing party.  *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992) (citing *Sheets v. Yamaha Motors Corp. U.S.A.*, 891 F.2d 533, 539 (5th Cir. 1990)).

Title 28 U.S.C. § 1920 identifies recoverable costs:

A judge or clerk of any court of the United States may tax as costs the following:(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4)

---

[9]  She asserts that during several court appearances, she expressed her decision not to pursue these claims.

> Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2000). A court may decline to award the costs listed in the statute, but may not award costs omitted from the list. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).

Before a court taxes a bill of costs, the party claiming the cost shall attach an affidavit that such amount is correct, was necessarily incurred during the case, and the services which gave rise to the cost were actually and necessarily performed. 28 U.S.C. § 1924 (2000). To assist the court, the prevailing party should provide some demonstration that the costs necessarily result from the litigation. *Id*. at 286. If a party does not set out costs with sufficient particularity, a court may disallow them. *See Davis v. Commercial Union Ins. Co.*, 892 F.2d 378, 385 (5th Cir. 1990).

In the instant case, Persons did not submit the appropriate affidavit in support of her request. Moreover, other than merely saying so, she presents no supporting materials, documentation or information to show that these costs were necessary, were incurred as part of this litigation, or are taxable under § 1920. Accordingly, her request for $4,846 in costs is denied.

16

<u>CONCLUSION</u>

Accordingly, the Court hereby

ORDERS that Plaintiff Debbie Persons's Motion to Amend Final Judgment and Application for Attorney's Fees (Instrument No. 70) is GRANTED IN PART AND DENIED IN PART.  Persons shall not be reinstated to her former position. However, she shall recover $51,000 in front pay from Defendant Jack in the Box. The Court further

ORDERS that Persons shall recover attorneys' fees in the amount of $33,839.50 from Defendant Jack in the Box.  In the event of an appeal, Persons shall recover an additional $2,000 in attorneys' fees.

ORDERS that the pre-judgment and post-judgment interest rate is 4.77%.

SIGNED at Houston, Texas, on this 31st day of March, 2006.

_____
DAVID HITTNER
United States District Judge

17